UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARKETTA MAY,

                Plaintiff,           Case No. 16-12131

v.                               Paul D. Borman
                               United States District Judge

COMMISSIONER OF SOCIAL
SECURITY,                         Stephanie Dawkins Davis
                               United States Magistrate Judge

                Defendant.
_____/

**OPINION AND ORDER:**
**(1) SUSTAINING DEFENDANT'S OBJECTIONS (ECF NO. 24);**
**(2) OVERRULING PLAINTIFF'S OBJECTIONS (ECF NO. 25);**
**(3) REJECTING IN PART AND ADOPTING IN PART THE MAGISTRATE**
**JUDGE'S REPORT AND RECOMMENDATION (ECF NO. 23);**
**(4) DENYING PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT (ECF NO. 14);**
**(5) GRANTING DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT (ECF NO. 17); AND**
**(6) AFFIRMING THE DECISION OF THE COMMISSIONER OF**
**SOCIAL SECURITY**

On September 14, 2017, Magistrate Judge Stephanie Dawkins Davis issued a

Report and Recommendation on the parties' cross-motions for summary judgment.

(ECF No. 23, Report and Recommendation ("**R&R**").) The Magistrate Judge

recommended that this Court grant Plaintiff Darketta May's Motion for Summary

Judgment (ECF No. 14, Pl.'s Mot.), deny Defendant Commissioner of Social

Security's ("**Commissioner**") Motion for Summary Judgment (ECF No. 17, Def.'s

Mot.), reverse certain findings of the Commissioner, and remand the matter for an award of continuing benefits to Plaintiff.

Now before the Court is the Commissioner's Objection to the Report and Recommendation (ECF No. 24, Def.'s Obj.), as well as Plaintiff's Response to the R&R, which the Court construes as objections to certain portions of the R&R (ECF No. 25, Pl.'s Obj.). Plaintiff also filed a timely Response to the Commissioner's Objection. (ECF No. 26, Pl.'s Resp.) Having conducted a *de novo* review of the Magistrate Judge's Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), the Court will sustain the Commissioner's Objection to the R&R, overrule Plaintiff's Objections, reject the R&R, and affirm the Commissioner's decision.

## I.    BACKGROUND

The findings of the Administrative Law Judge ("**ALJ**") and the pertinent portions of the Administrative Record are accurately and adequately set forth in the Report and Recommendation. There are no material inconsistencies with these accounts and the Court incorporates them here. The following summary contains only the facts essential to this Court's evaluation of the parties' objections.

Plaintiff filed the instant claims for a period of disability and disability insurance benefits on March 16, 2007. Plaintiff alleged that her disability began on October 22, 2004, after she suffered an injury at work. (R&R at 2, Pg ID 1285 (citing

ECF Nos. 7-7-14, Transcript of Social Security Proceedings ("**Tr.**") at 14); Tr. at 647.) Plaintiff's claim was disapproved by the Commissioner, and that decision was affirmed on *de novo* review by an ALJ, who determined that Plaintiff was not disabled. The Social Security Appeals Council granted Plaintiff's request for review of that decision, whereupon a second ALJ considered the matter on remand and reached the same conclusion. (R&R at 2, Pg ID 1285.) Plaintiff appealed the second negative determination to this Court, and in an April 15, 2014 opinion, this Court summarized the unique procedural posture of the case up to that point in the following way:

> This action has a slightly different background than many social security actions that come before this Court. This action has already been remanded once by the Appeals Council for a failure to conform to the regulations where the ALJ failed to evaluate a treating physician's opinion. Then, after remand and a second unfavorable decision from a second ALJ, Plaintiff eventually appealed to this Court and the Magistrate Judge found that the second ALJ failed to evaluate a different treating physician's opinion in violation of those same regulations. To remedy this error, the Magistrate Judge recommended that this action be remanded again so a third ALJ can properly evaluate the treating physicians' opinions together, assign them weight, and give good reasons for his or her decision.

*May v. Comm'r of Soc. Sec.*, No. 12-11597, 2014 WL 1464453, at \*2 (E.D. Mich. Apr. 15, 2014). The Court adopted the Magistrate Judge's recommendation over

Plaintiff's objections, and remanded the matter to the Commissioner for redetermination by a third ALJ. *Id.* at *16.

That third ALJ (ALJ Carol Guyton[1]) conducted a hearing on January 22, 2016. Thereafter, ALJ Guyton issued a decision that was partially favorable to Plaintiff, determining that she was entitled to benefits for a closed period between October 22, 2004 and September 1, 2007, but that her disability (and thus her entitlement to benefits) ended on September 2, 2007 owing to improvements in her condition.[2] (R&R at 2-3, Pg ID 1285-86.)

The Magistrate Judge summarized ALJ Guyton's findings as follows:

The ALJ applied the five-step disability analysis [set forth in 20 C.F.R. § 404.1520(a)(4)] to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. [(Tr. 645).] At step two, from October 22, 2004 through September 1, 2007, the ALJ found that plaintiff's degenerative disc disease of the lumber spine, status-post lumbar laminectomy and fusion, and obesity were severe impairments. (Tr. 646). At step three, the ALJ found that from October 22, 2004 through September 1, 2007, plaintiff's severe impairments met Listing 1.04A. (Tr. 646-648). Thus,

---

[1] All references to "the ALJ" throughout the remainder of this Opinion and Order refer to ALJ Guyton.

[2] Based on that distinction, this Opinion and Order refers to the period between October 22, 2004 and September 1, 2007 as the "covered period," and to the period from September 2, 2007 to the present as the "non-covered period."

the ALJ determined that plaintiff was under a disability from the alleged onset date through September 1, 2007. (Tr. 648).

(R&R at 3-4, Pg ID 1286-87.)

The reference to "Listing 1.04A" in the quoted passage above pertains to the third step of 20 C.F.R. § 404.1520(a)(4)'s five-step disability analysis, in which the claimant's impairments are evaluated to determine whether they meet or equal one of the impairments listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. If this is the case, the claimant is "conclusively presumed to be disabled without further analysis." *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 (6th Cir. 1995). Here, the listed impairment (Listing 1.04(A)) that the ALJ found Plaintiff's impairments met during the covered period encompassed

disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord[,] . . . [with e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

(Tr. 646-48 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04(A)).)

Importantly, however, ALJ Guyton found that Plaintiff met this listing only from the disability onset date of October 22, 2004 until September 2, 2007 (i.e., the covered period). The Magistrate Judge explained this finding by the ALJ in the

following way:

> Beginning on September 2, 2007, the ALJ found plaintiff's severe
> impairments were the same, but that plaintiff did not have an
> impairment or combination of impairments that met or medically
> equaled a Listing as of that date because of medical improvement. (Tr.
> 648-649). The ALJ determined that plaintiff had the following residual
> functional capacity (RFC):

>> After careful consideration of the entire record, the undersigned
>> finds that, beginning September 2, 2007, the claimant has had the
>> residual functional capacity to perform sedentary work as
>> defined in 20 CFR 404.1567(a) except: the claimant could not
>> stand, walk, or sit for more than 15 minutes at a time. She could
>> occasionally stoop, crouch, balance or climb ramps or stairs. She
>> could never crawl, kneel, or climb ladders, ropes, or scaffolds.
>> She would require a handheld assistive device for prolonged
>> ambulation or on uneven terrain. She should avoid hazardous
>> machinery, unprotected heights, and fast moving hazards. She
>> would be limited to simple, routine, repetitive tasks and simple
>> work related decisions with few workplace changes and free of
>> fast-paced production demands.

> (Tr. 649). At step four, the ALJ concluded that plaintiff could not
> perform past relevant work as a nurse assistant. (Tr. 682). At step five,
> the ALJ denied plaintiff benefits after September 1, 2007 because
> plaintiff could perform a significant number of jobs available in the
> national economy. (Tr. 683).

(R&R at 3-4, Pg ID 1286-87.)

Central to the ALJ's decision was her determination that as of September 2,

2007, Plaintiff's condition had improved such that her impairments no longer met

Listing 1.04(A). The ALJ based that determination on the following findings:

> The objective medical evidence fails to provide strong support for the claimant's allegations of disabling symptoms and limitations after September 1, 2007. The claimant underwent a consultative examination performed by E. Montasir, M.D., on September 1, 2007. On exam, the claimant presented with a normal gait, excellent handgrip strength, full motor strength, and negative muscle atrophy. Dr. Montasir noted the claimant was able to get on and off the exam table without difficulty. Dr. Montasir did not issue any functional restrictions from physical impairments. (Ex. 13F). The claimant's reports of back pain after September 2007 were treated conservatively with medication and lumbar injections. The claimant's reports of ongoing severe back pain are inconsistent with musculoskeletal findings after September 2007. On exam after September 2007, the claimant presented with full extremity strength and a normal gait (Ex. 15F/3, 20F/7, 8, 10, 11). In February 2010, the claimant reported her back [pain] was only a 5 out of 10 (Ex. 20F/28). In an April 2010 office treatment, the claimant reported her pain medication was helpful in treating her pain (Ex. 20F/25). In November 2014, the claimant again reported her medication was helpful in treating her pain (Ex. 21F/4).

(R&R at 14-15, Pg ID 1297-98 (alteration in original) (quoting Tr. 649).)

The Magistrate Judge found error in the ALJ's determination. Specifically, in the Magistrate Judge's view, the ALJ's finding that Plaintiff's impairments no longer met or equaled Listing 1.04(A) as of the beginning of the non-covered period due to her medical improvements was not supported by substantial evidence. Several different rationales underlay the Magistrate Judge's conclusion in this regard.

First, the Magistrate Judge took issue with the ALJ's partial reliance on the fact that Dr. Montasir "did not issue any functional restrictions from physical impairments" after the September 1, 2007 consultative examination. (R&R at 15, Pg ID 1298.) The Magistrate Judge found the significance of this fact to be unclear, both because there was no indication that Dr. Montasir was actually asked to issue restrictions, and because the ALJ had rejected a reviewing physician's opinion (issued nine days after Dr. Montasir's report) that Plaintiff could perform medium exertional work as inconsistent with Plaintiff's limitations. (*See* R&R at 15-16, Pg ID 1298-99.)

The primary basis for the Magistrate Judge's conclusion was a comparison of the ALJ's evidence that Plaintiff's impairments met Listing 1.04(A) during the covered period, on the one hand, and the ALJ's evidence of Plaintiff's medical improvement after that date, on the other hand. Such a comparison, the Magistrate Judge reasoned, demonstrated that Plaintiff's condition later during the non-covered period was similar enough to her condition earlier during the covered period to undermine the ALJ's finding that Plaintiff no longer met Listing 1.04(A) as of September 2, 2007, the beginning of the non-covered period. More specifically, the Magistrate Judge identified several aspects of Plaintiff's condition that the ALJ cited in finding that Plaintiff met Listing 1.04(A) during the covered period, *and* (the

record suggests) did not change after September 1, 2007. These include (1) a herniation in Plaintiff's lumbar spine that was first revealed in a December 2004 magnetic resonance imaging ("**MRI**");[3] (2) the fusion and laminectomy procedure that she underwent in July 2006, any effects of which would have continued through September 2007; (3) her straight leg raising test results; (4) her muscle weakness; and (5) her lumbar tenderness. (*See* R&R at 16-17, 22-23, Pg ID 1299-1300, 1305-06.) The Magistrate Judge also highlighted ways in which most of the evidence that the ALJ relied upon to conclude that Plaintiff did not meet the listing as of September 2, 2007 did not, in fact, reflect medical improvement:

- the ALJ partly relied on the fact that Plaintiff reported her pain level as 5 out of 10 in February 2010 (compared with 8 out of 10 in February 2007), but the record indicates that Plaintiff also reported this same pain level at times during the covered period, and also that she reported much higher pain levels at other times during the non-covered period;

- the ALJ partly relied on Plaintiff's reporting in April 2010 and in November 2014 that medication was helpful in treating her pain, but Plaintiff had made observations like this before April 2010 and

---

[3] On this point, the Magistrate Judge noted that the record evidenced three spinal MRIs in total: one in December 2004 reflecting a large L5-S1 herniation, as mentioned above; one in February 2007, which the ALJ did not expressly mention in her decision, but which was taken during the covered period; and one in March 2009, which was taken during the non-covered period but which showed no change from the 2007 MRI, according to Dr. Arthur Lorber, who testified at the hearing as a medical expert. (*See* Report and Recommendation at 16-17 (citing Tr. 697).)

during the covered period, and also stated that medications were not helping;

- the ALJ partly relied on the fact that Plaintiff received "conservative treatment" (*i.e.*, medication and injections only) after September 2007, but the record indicates that this course of treatment was not actually effective;

- the ALJ partly relied on Dr. Montasir's report that Plaintiff presented with a normal gait, but improvements in Plaintiff's gait began prior to September 2, 2007, and improvement after that date was tempered by reports that Plaintiff's gait was slow and that she sometimes required a cane; and

- the ALJ partly relied on "musculoskeletal findings" made after September 2007, but these were indistinguishable from those made during the covered period.

(R&R at 17-22, Pg ID 1300-05.) Based on the foregoing, the Magistrate Judge concluded that the ALJ's finding that Plaintiff no longer met Listing 1.04(A) as of September 2, 2007 owing to medical improvements was not supported by substantial evidence, since the ALJ failed to "build an accurate and logical bridge between the evidence and the result." (R&R at 12, Pg ID 1295 (internal quotation marks omitted) (quoting *Thomas v. Comm'r of Soc. Sec.*, No. 1:16-CV-262, 2017 WL 127509, at *4 (W.D. Mich. Jan. 13, 2017)).) This Court disagrees with this conclusion by the Magistrate Judge.

Acknowledging that this conclusion was enough in itself to justify reversal of

the ALJ's findings, the Magistrate Judge nevertheless went on to address Plaintiff's arguments regarding the weight that the ALJ afforded to different medical opinions in the interest of completeness. As to the opinions of treating physician Dr. Jeffrey Kimpson, the Magistrate Judge rejected Plaintiff's contention that the ALJ accorded insufficient weight to those opinions (and failed to explain the weight that she did accord them), finding instead that those opinions were too conclusory to qualify as "medical opinions" under the applicable regulations. (*See* R&R at 27-32, Pg ID 1310-15.) This Court finds, however, that the ALJ properly regarded Dr. Kimpson's opinions as qualified "medical opinions."

Regarding the opinions of treating physicians Dr. White and Dr. Soo, the Magistrate Judge agreed with Plaintiff that the ALJ's summary rejection of those opinions as "excessive" in light of Dr. Montasir's report was erroneous, but nevertheless concluded that the error was harmless because the residual functional capacity that the ALJ assessed for Plaintiff was actually consistent with those opinions. (*See* R&R at 32-41, Pg ID 1315-24.) Indeed, the Magistrate Judge noted: "[A]s the Commissioner correctly points out, none of the jobs identified by the vocational expert that someone with plaintiff's RFC could perform involve any stooping. Therefore, the exclusion of this limitation results in no prejudice." (R&R at 41, Pg ID 1324 (internal citations omitted).)

11

## II.    STANDARDS OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court conducts a *de novo* review of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed "specific written objections" in a timely manner. *Lyons v. Comm'r Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* (internal quotation marks omitted). "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). Likewise, an objection that does nothing more than disagree with a magistrate judge's determination "without explaining the source of the error" is not a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

In reviewing the findings of the Administrative Law Judge ("**ALJ**"), the Court is limited to determining whether those findings are supported by substantial

evidence and made pursuant to proper legal standards. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(h)); *see also Cutlip v. Sec't of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)); *see also McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (recognizing that substantial evidence is "more than a scintilla of evidence but less than a preponderance") (internal quotation marks omitted). "If the Commissioner's decision is supported by substantial evidence, [the court] must defer to that decision, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

As to whether proper legal criteria were followed, a decision of the Social Security Administration ("**SSA**") that is supported by substantial evidence will not be upheld "where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v.*

*Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

This Court does not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip*, 25 F.3d at 286. It is "for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247; *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

## III.     ANALYSIS

The Commissioner objects to the Magistrate Judge's determination that substantial evidence did not support the ALJ's conclusion that Plaintiff medically improved as of September 2, 2007, such that she no longer met Listing 1.04(A). Plaintiff, while acknowledging that the Magistrate Judge found in her favor, has nonetheless filed her own objections to the Report and Recommendation, arguing that the Magistrate Judge's rejection of her arguments concerning the weight placed by the ALJ on treating-physician evidence was itself in error.

For the reasons discussed below, this Court finds that the ALJ's determination of medical improvement was in fact supported by substantial evidence, and sustains

the Commissioner's objections and rejects the portion of the Report and Recommendation concerning Plaintiff's medical improvement. The Court also overrules Plaintiff's objections. Accordingly, the decision of the ALJ is affirmed.

## A.    The Commissioner's Objections

The Commissioner argues that the Magistrate Judge erred in finding that substantial evidence did not support the ALJ's determination that Plaintiff experienced medical improvement as of September 2, 2007. Because this Court concludes that the ALJ's decision was supported by substantial evidence, the Court sustains the Commissioner's objection.

"The Commissioner bears the burden of demonstrating a 'medical improvement.'" *Campbell v. Comm'r of Soc. Sec.*, No. 10-13098, 2011 WL 2160460, at *4 (E.D. Mich. June 1, 2011) (quoting *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007)). At the same time, where the ALJ's finding of medical improvement is supported by substantial evidence, a reviewing court "must defer to that decision, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)). This Court's review of the ALJ's findings "must be based on the record as a whole," and the Court "may look to any evidence in the record, regardless of

whether it has been cited by the [ALJ]." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (citing *Walker v. Secretary of Health & Human Servs.,* 884 F.2d 241, 245 (6th Cir. 1989)).

In this case, the Magistrate Judge found that because there was evidence that some of Plaintiff's symptoms were present both during and after the covered period, and because some of the evidence supporting the ALJ's finding of medical improvement was undermined by other evidence in the record, the ALJ failed to "build an accurate and logical bridge between the evidence and the result." (R&R at 12, Pg ID 1295 (internal quotation marks omitted) (quoting *Thomas v. Comm'r of Soc. Sec.*, No. 1:16-CV-262, 2017 WL 127509, at *4 (W.D. Mich. Jan. 13, 2017)).) Although the Magistrate Judge's thorough analysis did identify weaknesses in the evidence underlying the ALJ's medical improvement determination, this Court finds that that determination was still supported by substantial evidence, which binding precedent defines as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)).

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of the

criteria, no matter how severely, does not qualify." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (internal quotation marks omitted) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). The medical improvement issue before the ALJ was whether Plaintiff continued to suffer from a severe impairment that met or exceeded Listing 1.04(A). Listing 1.04(A) encompasses spinal disorders "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord," with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04(A). In finding that Plaintiff no longer met every element of Listing 1.04(A) as of September 2, 2007, the ALJ relied to an appreciable degree on the opinion rendered by Dr. Montasir after his September 1, 2007 examination of Plaintiff. As the Magistrate Judge noted, the ALJ took into account "Dr. Montasir's observations that, on exam, plaintiff presented with a normal gait, excellent handgrip strength, full motor strength, and negative muscle atrophy," as well as Dr. Montasir's observation that Plaintiff "was able to get on and off the exam table without difficulty." (R&R at 15, Pg ID 1298.)

17

Compared with evidence of Plaintiff's condition at different times prior to the September 1, 2007 examination, Dr. Montasir's report in itself constitutes substantial evidence of a medical improvement such that Plaintiff no longer met Listing 1.04(A) as of that date, provided that the record does not also contain evidence that contradicts or undermines the report so significantly that a reasonable mind could no longer accept it as adequate to support that conclusion. This Court disagrees with the Magistrate Judge's assessment that the record contains such countervailing evidence. For example, regarding Plaintiff's gait, the Magistrate Judge suggested that the ALJ's decision "appears to place a gloss on the medical findings and does not support a finding of medical improvement" (R&R at 21, Pg ID 1304), but substantial evidence in the record in fact supports such a finding: Plaintiff was observed to have an antalgic gait in treatment notes dating from 2005 and 2006, but later records reflect that her gait was steady (if sometimes slow) at various points in 2010, 2011, 2012, and 2013.[4] (*Compare* Tr. at 325, 397, 407 *with* Tr. at 617, 633, 1047, 1051, 1058-59, 1075, 1092.) In addition, although the

---

[4] The Magistrate Judge found it significant that a treatment note from February 2007—i.e., during the covered period—described Plaintiff's gait as "ok," and also noted that in some of the records from 2010 to 2013 reflecting an improved gait, it is noted that Plaintiff used a cane. (*See* R&R at 20-21, Pg ID 1303-04.) In this Court's view, these facts do not outweigh the clear trend towards improvement that these records demonstrate overall.

Magistrate Judge found that positive musculoskeletal findings during the non-covered period were undermined by the fact that Plaintiff's muscle strength had been typically found to be intact even during the non-covered period (*see* R&R at 21-22, Pg ID 1304-05), this does not change the fact that during the later period, Plaintiff did not meet all of the elements of Listing 1.04(A)—elements which include "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04(A)). Finally, although the Magistrate Judge was correct to observe that Plaintiff still presented with a positive bilateral straight leg raise test at Dr. Montasir's examination (despite the other indications of improvement), this factor alone is not dispositive, and Plaintiff must satisfy the other components of Listing 1.04(A) to prevail on this issue.

Moreover, to whatever extent the evidentiary value of Dr. Montasir's examination report is undermined by the competing evidence cited by the Magistrate Judge, the Court notes that the ALJ also relied on the testimony of Dr. Arthur Lorber, a non-treating physician enlisted by the ALJ to provide an analysis of Plaintiff's voluminous medical records. Dr. Lorber's opinion was that Plaintiff no longer met Listing 1.04(A) as of July 2007 (i.e., one year after Plaintiff underwent her fusion and laminectomy procedure), rather than September 2007. The ALJ made clear that

19

she gave "partial weight to Dr. Lorber's assessment in terms of his recommendation for a closed period of disability for meeting listing l .04(A) from 2004 through 2007 because his assessment is consistent with the medical record and the claimant's testimony regarding her back pain following her work injury." (Tr. at 647-48.) The fact that the ALJ found Plaintiff's disability period to have terminated several weeks after Dr. Lorber opined it did does not undermine the reasonableness of the ALJ's partial reliance on Dr. Lorber's analysis of the medical records in support of her conclusion that Plaintiff medically improved in 2007 so as to no longer meet Listing 1.04(A). Thus, Dr. Lorber's testimony also contributed to the substantial evidence supporting the ALJ's finding.

Finally, the Court notes that the record also contains evidence from at least one treating physician that supports the conclusion that Plaintiff was not totally and permanently disabled as of September 2007. Specifically, the ALJ accorded "partial weight" to Dr. White's "medical source statement opining the claimant could not stand, walk, or sit for longer than 15 minutes at a time," which Dr. White issued in December 2008. (Tr. at 650.) The ALJ went on to conclude that Plaintiff actually required greater restrictions than this after the disability period closed on September 2, 2007, but Dr. White's 2008 statement nonetheless provided at least some degree of evidentiary support from a treating source that would support the ALJ's finding

of medical improvement.

For these reasons, the Court concludes that the ALJ's decision was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kyle*, 609 F.3d at 854. Accordingly, the Commissioner's objection to the Report and Recommendation is sustained.

**B.      Plaintiff's Objections**

Plaintiff raises four objections concerning Section III.B.2 of the Report and Recommendation, which contains the Magistrate Judge's alternative analysis of Plaintiff's arguments regarding the weight placed by the ALJ on the treating-physician opinions of Dr. Kimpson, Dr. White, and Dr. Soo. For the reasons that follow, the Court overrules Plaintiff's objections.

**1.      Objection 1**

Plaintiff first objects that the Magistrate Judge's analysis of Plaintiff's arguments regarding the treating-physician evidence in the record was unnecessary, stating that "[a]lthough plaintiff understands the Magistrate's desire to address these issues for the sake of completeness, given this Court's previous remand, these issues were clearly moot and not necessary to her decision." (Pl.'s Obj. at 3, Pg ID 1342.) Plaintiff cites no authority for the proposition that this portion of the Report and

Recommendation should be rejected solely because it was not necessary to the outcome of this proceeding. Thus, to the extent Plaintiff objects that Section III.B.2 of the Report and Recommendation should be rejected solely because it is *dicta*, the Court overrules that objection.

### 2. Objection 2

As noted, the Magistrate Judge rejected Plaintiff's argument that the ALJ improperly categorized treating physician Dr. Kimpson's opinion evidence as too conclusory to be considered "medical opinions" under the governing regulations. Instead, Plaintiff maintains that Dr. Kimpson's opinions should have been given controlling weight under the "treating source" rule. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (holding that "the medical opinions and diagnoses of treating physicians" are to be given "substantial deference—and, if the opinion is uncontradicted, complete deference").

Regarding Dr. Kimpson's opinion evidence, the ALJ found as follows:

In April 2010 and January 2015, Jeffery Kimpson, M.D., issued a medical source statement opining the claimant was unable to work since December 2004 and she was permanently disabled (Ex. 19F/2, 24). The undersigned accords little weight to Dr. Kimpson's assessments because the ultimate decision of disability is an issue reserved to the Commissioner under SSR 96-5p.

Tr. at 649. The Magistrate Judge found that the ALJ properly rejected Dr. Kimpson's

opinions as overly conclusory, because they did little more than to indicate that

Plaintiff was disabled, and the Magistrate Judge therefore concluded that they did

not constitute medical opinions under the governing regulations. Specifically, the

Magistrate Judge explained that

> [t]he applicable regulations define medical opinions as "statements
> from physicians ... that reflect judgments about the nature and severity
> of your impairment(s), including your symptoms, diagnosis and
> prognosis, what you can still do despite impairment(s), and your
> physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Dr.
> Kimpson opined that plaintiff was unable to work since December 2004
> and that she was permanently disabled. Announcing that plaintiff is
> permanently disabled with unnamed restrictions, lacking any
> explanation as to how that conclusion translates in terms of a functional
> analysis, essentially amounts to an opinion on a matter reserved to the
> Commissioner (i.e., disability) and does not meaningfully inform the
> ALJ as to plaintiff's impairments or resulting limitations and
> restrictions. Thus, Dr. Kimpson's statement is not properly
> characterized as a medical opinion; and accordingly, the ALJ was not
> required to give it controlling weight or subject it to a good reasons
> analysis.

(R&R at 31, Pg ID 1314.)

The opinions of Dr. Kimpson that were cited by the ALJ, and deemed

conclusory by the Magistrate Judge, consisted of two statements. First, in April

2010, Dr. Kimpson issued and signed the following statement:

Ms. Darketta May has been treated at the Providence Pain Management Center since December 13, 2006, for lumbar radiculopathy status post laminectomy and fusion. Despite treatment with surgery, epidural steroid injections, physical therapy and medications, Ms. May experiences intractable low back and bilateral leg pain. The option of spinal cord stimulator has been discussed. She has difficulties with activities of daily living and even with light household chores. She experiences numbness, tingling and weakness of her right leg. She is currently being managed on Extended Release Morphine and Vicodin. Ms. May has been unable to work since December 7, 2004, because of severe intractable pain. In my opinion, Ms. Darketta May is permanently disabled.

(Tr. at 631.) Second, nearly five years later, Dr. Kimpson issued the following

materially similar statement:

The patient has been under my treatment at the Providence Pain Management Center since December 13, 2006. I treated the patient for lumbar radiculopathy status-post laminectomy syndrome and history of lumbar fusion. The patient continues to have severe pain despite surgery. I also refer you to my letter dated April 9, 2010. The patient continues treatment with epidural steroid injections, physical therapy and high doses of narcotic medications, but continues to experience severe low back pain. The patient has difficulty with activities of daily living and even with light household chores. She experiences numbness, tingling and weakness in her right leg. The patient has been unable to work, to my knowledge, since December 7, 2004 due to her intractable pain. In my opinion, the patient has reached maximum medical improvement and is totally and permanently disabled.

(Tr. at 1115.)

As noted *supra*, this Court disagrees with the Magistrate Judge's

determination that Dr. Kimpson's opinion of permanent disability was too conclusory to be considered a medical opinion for the purposes of the treating source rule. Yet even if Dr. Kimpson's statements did come within the scope of the treating source rule, an ALJ is not required to give controlling weight to a treating-source opinion that is contradicted by other substantial evidence in the record. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) ("[T]he 'treating physician rule" requir[es] the ALJ to give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'") (quoting 20 C.F.R. § 404.1527(c)(2)). *See also Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting with approval a Social Security Ruling explaining that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source . . . if it is inconsistent the with other substantial evidence in the case record") (internal quotation marks omitted) (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *2 (July 2, 1996)). As explained above, this Court finds that the ALJ's decision was supported by substantial evidence. Accordingly, the Court overrules Plaintiff's second objection.

### 3.      Objection 3

Plaintiff's third objection is that the Magistrate Judge acknowledged but ultimately failed to fully address her argument that the ALJ's findings as to Plaintiff's own credibility were not supported by substantial evidence.

Plaintiff's argument—both as presented in her summary judgment motion, and as reiterated in her objections—is unclear as to the nature of the error it assigns to the ALJ's decision. The ALJ did not make any specific adverse credibility determination with regard to Plaintiff's testimony, finding only that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are generally credible from October 22, 2004 through September 1, 2007." (Tr. at 647.) Even assuming that this logically implies a belief on the ALJ's part that Plaintiff's testimony regarding her symptoms after September 1, 2007 was *not* credible—and it is not obvious that this follows from the ALJ's statement— Plaintiff has not explained how her testimony, or any finding by the ALJ regarding her testimony, demonstrates that the ALJ's overall conclusion was not supported by substantial evidence.

It is "for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531

(6th Cir. 1997)). Of course, "the ALJ is not free to make credibility determinations based solely upon an intangible or intuitive notion about an individual's credibility," and "such determinations must find support in the record." *Id.* (internal quotation marks and citations omitted). Even so, reviewing courts accord "great deference" to the credibility determinations of ALJs, and they recognize that a claimant's credibility "may be properly discounted 'to a certain degree ... where an [ALJ] finds contradictions among the medical reports, claimant's testimony, and other evidence.'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 531). In this case, the Court has found that the ALJ's decision was supported by substantial evidence in the record; to whatever extent that decision required an implicit adverse credibility determination by the ALJ, that determination is entitled to deference. Plaintiff's third objection is overruled.

### 4.    Objection 4

Finally, Plaintiff objects to the Magistrate Judge's discussion of the weight given to Dr. White and Dr. Soo's opinions, because that part of the Report and Recommendation could be interpreted as being in conflict with the Magistrate Judge's primary recommendation that this Court reverse the ALJ's decision, and therefore find that Plaintiff continued to meet Listing 1.04(A) as of September 2, 2007. Specifically, the Magistrate Judge determined that even if the ALJ erred in

27

summarily dismissing the opinions of Dr. White and Dr. Soo as excessive, the error was harmless, since the RFC that the ALJ ultimately assessed was consistent with those opinions. This was effectively *dicta*: the essential finding of the Magistrate Judge's analysis was her recommendation that this Court reverse the ALJ's decision to terminate Plaintiff's benefits period at September 2, 2007, and remand the matter for an award of continuing benefits—an outcome which would avoid altogether the issue of whether the ALJ's RFC assessment was proper.

As set forth above, however, this Court rejects that portion of the Report and Recommendation, and finds that substantial evidence did in fact support the ALJ's conclusion that Plaintiff ceased to meet Listing 1.04(A) as of September 2, 2007. This Court also finds that the ALJ's RFC determination was itself supported by substantial evidence: (1) it was supported by Dr. Montasir's examination report and by Dr. Lorber's testimony, just as the ALJ's medical improvement determination was; (2) it was consistent with the opinions of Dr. Soo and Dr. White, as the Magistrate Judge correctly found (*see* R&R at 32-41, Pg ID 1315-24); and (3) its evidentiary grounding was not significantly weakened by Dr. Kimpson's evidence or by Plaintiff's testimony, for the reasons discussed above. To whatever extent the Report and Recommendation suggests that the ALJ's RFC determination was supported by substantial evidence, therefore, this does not amount to an error,

because it was in fact supported by substantial evidence. For this reason, Plaintiff's fourth objection is overruled.

## IV. CONCLUSION

For all of the reasons stated above, the Court hereby:

- SUSTAINS the Commissioner's objections (ECF No. 24);
- OVERRULES Plaintiff's objections (ECF No. 25);
- REJECTS IN PART and ADOPTS IN PART the Report and Recommendation of the Magistrate Judge (ECF No. 24);
- DENIES Plaintiff's Motion for Summary Judgment (ECF No. 14);
- GRANTS the Commissioner's Motion for Summary Judgment (ECF No. 17); and
- AFFIRMS the decision of the Commissioner of Social Security.

IT IS SO ORDERED.


Dated:  August 8, 2018                       s/Paul D. Borman
                                             Paul D. Borman
                                             United States District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 8, 2018.

                                             s/D. Tofil
                                             Deborah Tofil, Case Manager